# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRYAN MICHAEL FERGUSON, A.K.A.,
BRYAN MICHAEL FERGASON

    Petitioner,

v.

DWIGHT NEVEN, et al.,

    Respondents

Case No.: 2:14-cv-00179-GMN-VCF

**ORDER**

Pending before the Court is the pro se Petition for Writ of Habeas Corpus, (ECF No. 6), filed by Petitioner Bryan Michael Ferguson,[1] a prisoner in the custody of the State of Nevada. The State filed an Answer, (ECF No. 26), and Ferguson filed a Reply, (ECF No. 27). After evaluating his claims on the merits, this Court, for the reasons discussed below, **DENIES** Ferguson's petition for a writ of habeas corpus, **DISMISSES** this action with prejudice, and **DENIES** a certificate of appealability.

## I.    BACKGROUND

This Court laid out the procedural history of this action on August 25, 2015:

> In the Eighth District Court for the State of Nevada, petitioner was convicted, pursuant to a jury trial, of the following crimes: two counts of burglary, one count of grand larceny, and one count of possession of burglary tools. (Exhibit 40). At the sentencing hearing on May 5, 2008, the state district court declined to sentence petitioner under the habitual criminal statute. (Exhibit 43, at p. 10). Petitioner was sentenced as follows: On Count I, burglary, 36-120 months imprisonment; on Count II, grand larceny, 36-120 months imprisonment, running concurrently with Count I; on Count IV, burglary, 36-120 months, running consecutively to Counts I and II; and on Count V, possession of burglary tools, 12 months in the Clark County Detention Center. (Exhibit 43, at pp. 10-11). The judgment of conviction was filed on May 29, 2008. (Exhibit 45).
> 
> Petitioner appealed his convictions. (Exhibit 44). On December 8, 2008, petitioner filed a fast track statement. (Exhibit 50). The State filed its response to the fast track statement on February 23, 2009. (Exhibit 51). On July 7, 2009, the Nevada Supreme Court filed an order affirming petitioner's convictions. (Exhibit 52). Remittitur issued on August 4, 2009. (Exhibit 53).
> 
> On August 4, 2010, petitioner filed a post-conviction habeas petition in the

---

[1] This Court spells his last name as "Ferguson," although occasional quotations spell it as "Fergusan."

1

state district court. (Exhibit 68). An evidentiary hearing was held on March 9, 2012. (Exhibit 79). Petitioner filed a supplemental brief on April 20, 2012. (Exhibit 80). On October 30, 2012, the state district court entered an order denying petitioner's post-conviction habeas petition. (Exhibit 84). Petitioner appealed the order denying his post-conviction habeas petition. (Exhibit 86). Petitioner's opening brief was filed on July 30, 2013. (Exhibit 91). The State filed its answering brief on August 29, 2013. (Exhibit 92). On January 16, 2014, the Nevada Supreme Court entered an order affirming the denial of petitioner's post-conviction habeas petition. (Exhibit 94). Remittitur issued on February 28, 2014. (Exhibit 95).

On January 28, 2014, petitioner dispatched his federal habeas petition to this Court. (ECF No. 6, at p. 1). Ground 1 of the petition alleges that petitioner's Sixth Amendment Confrontation Clause rights were violated pursuant to *Bruton v. U.S.*, 391 U.S. 123 (1968), when the trial court admitted a recording of a telephone call that his co-defendant made from jail. Ground 2 of the petition alleges ineffective assistance of trial counsel. Ground 3 alleges that petitioner's appellate counsel failed to challenge the sufficiency of the evidence supporting his convictions on direct appeal. Respondents have filed a motion to dismiss the petition, arguing that Ground 3 is unexhausted. (ECF No. 10). Petitioner has opposed the motion. (ECF No. 19). (ECF No. 20 at 1–2.)[2] This Court then held that Ground 3 of the petition was unexhausted. (*Id.* at 4.) Ferguson elected to voluntarily abandon Ground 3, leaving only Grounds 1 and 2. (ECF No. 21.) The State filed an Answer, (ECF No. 26), and Ferguson filed a Reply, (ECF No. 27).

## II. FEDERAL HABEAS REVIEW STANDARDS

When a state court has adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling; that standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. *Id.* at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *Id.* at 181–88. The petitioner bears the burden of proof. *Id.* at 181.

---

[2] The exhibits referenced in this order are found in the Court's record at ECF Nos. 11–14 (Exhibits 1–36) and ECF Nos. 16–18 (Exhibits 37–95). All page citations are to the page numbers of the documents themselves, rather than the ECF-generated page numbers, except the citations to ECF Nos. 6 and 27, which are to the ECF-generated page numbers.

2

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Id.* at 16. A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *See, e.g.*, *id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). When a state court's factual findings based on the record before it are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls, which requires federal courts to be "particularly deferential" to state court factual determinations. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Id.* at 973. Rather, as the Ninth Circuit explained, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed to be correct and the petitioner must rebut that presumption by "clear and convincing evidence." In this inquiry, federal courts may not look to any factual basis not developed before the state court unless the

3

petitioner both shows that the claim relies on either (a) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (b) "a factual predicate that could not have been previously discovered through the exercise of due diligence," and shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

When a state court summarily rejects a claim, it is the petitioner's burden to show that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

## III. DISCUSSION

### A. Ground 1

In Ground 1, Ferguson argues that the trial court violated his "Sixth Amendment . . . right to Confrontation as interpreted in *Bruton v. United States*, 391 U.S. 123 (1968)" by admitting into evidence "tape recordings of the co-defendants [sic] phone conversation with a [sic] unrelated third party wherein the co-defendant discussed his commission of the crimes charged and involvement of another person as inferred by the use of 'we' when referring to the acts which gave rise to the crimes charged." (ECF No. 6 at 3; *see also id.* at 5 ("It is [Ferguson's] position that the recorded conversation[,] . . . by Monroe's use of the term 'we' necessarily implicates [Ferguson] in the crime(s) Monroe is admitting to.").)[3] He also claims that the trial court erred "by redacting the name of [Ferguson] and using a pronoun." (*Id.* at 4.) The Supreme Court of Nevada rejected Ferguson's claim on its merits, holding that the "references to 'we' provided minimal, if any, prejudice to Ferguson and admission of this telephone call did not violate the Confrontation Clause as interpreted in *Bruton*." (ECF No. 16-16 at 3–4.)

In doing so, it noted that Ferguson objected to the following passage:

"Well, we were drivin' and uh, well, doin' a walk thru and somebody had seen

---

[3] This Court notes that the pages of the petition are out of order, and are properly read going from page 3 to 5 and then returning to page 4. (*See* ECF No. 6 at 3–5.)

> it and we came back out and a body said, 'hey, you oughta get out of here they're calling.' So I started gettin' in and we pushed out and they pulled me. And they were gettin' ready to let us go and then this guy said, 'I think we had one of those up the street' and we had two or three pieces from there."
>
> "Yea, they were [unintelligible] when we were in where I told [neutral pronoun], I said, 'we don't want none of that crap, dude.' I didn't and f***in' he had to have 'em and so we put 'em in and then, it was [unintelligible] fault though, you know?"

(ECF No. 16-16 at 3 (as in original).) The record indicates that the phone calls were transcribed and given to the jury, but no transcripts were provided by the State to this Court. (*See* ECF No. 12-19 at 110; ECF No. 13-3 at 104, 112–13; *see also* ECF No. 16-15 at 4.) The trial transcripts also show a conversation outside the present of the jury where the issue is discussed. (*See* ECF No. 13-3 at 104–10.) Based on Ferguson's brief to the Supreme Court of Nevada, it appears that the transcript was included as "Exhibit A." (ECF No. 16-14 at 5.) Without this transcript of the recording as presented to the jury, this Court is left to either rely on incomplete characterizations from counsel—which are insufficient—or blindly follow the Supreme Court of Nevada's factual recitation—which would be an abdication of the federal courts' role in habeas proceedings.

"[I]f the role of a federal habeas court were simply to accept on faith the state court's description of the facts, free from any obligation to review the record on which the state court based its judgment, 'there would hardly be a reason to have a federal habeas statute at all.'" *Nasby v. McDaniel*, 853 F.3d 1049, 1052 (9th Cir. 2017) (citation omitted); *see also id.* at 1054 ("Regardless of what documents the parties originally submit, it is the district court's independent obligation to obtain the relevant portions of the record."). Even if a petition were likely without merit, that "cannot be said with certainty without a review of the record." *Turner v. Chavez*, 586 F.2d 111, 112 (9th Cir. 1978). Thus, when the contents of a transcript that were relied upon by the state court whose decision is under review and are "relevant to the [federal court's] adjudication of [the petitioner's] claims," there is "no alternative" but to review the transcripts or conduct a new evidentiary hearing. *Nasby*, 853 F.3d at 1053 (quoting *Jones v. Wood*, 114 F.3d 1001, 1008 (9th Cir. 1997)). Therefore, this Court must determine if the transcript of the challenged call that was provided to the jury is "relevant" to its "adjudication" of Ferguson's claim.

5

As another judge of this court has held, if they are able to decide the merits of a habeas petition by accepting as true all allegations of the losing party, then it may do so. *Guardado v. Nev. Attorney Gen.*, No. 3:10-cv-103, slip op. at 7–11 (D. Nev. Aug. 25, 2017) ("[T]his Court assumes the veracity of the petitioner's allegations . . . . Doing so, this Court finds that [the petitioner] is not entitled to habeas relief, and therefore the proceedings are not 'relevant' to its 'adjudication' . . . ."). Because this Court is able to resolve the merits of Ferguson's claim without the transcripts that were provided to the jury and reviewed by the Supreme Court of Nevada, those transcripts are not "relevant" in the *Nasby* sense.

The Supreme Court has "express[ed] no opinion on the admissibility of a confession in which the defendant's name has been [secretly] replaced with a symbol or neutral pronoun." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). After *Richardson*, the Ninth Circuit held that "[t]he admission in a joint trial of a codefendant's confession that is redacted to substitute a neutral pronoun or other general word for the name of the complaining defendant does not violate *Bruton* so long as the confession does not compel a direct implication of the complaining defendant." *United States v. Enriquez-Estrada*, 999 F.2d 1355, 1359 (9th Cir. 1993) (quoting *United States v. Sears*, 663 F.2d 896, 901 (9th Cir. 1981)). Later, the Ninth Circuit recognized that it had to modify that rule in light of an intervening Supreme Court case, *Gray v. Maryland*, 523 U.S. 185 (1998), such that it cannot be "obvious that an alteration has occurred [to the confession] to protect the identity of a specific person." *United States v. Peterson*, 140 F.3d 819, 822 (9th Cir. 1998); *see Gray*, 523 U.S. at 192 ("Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result."). Indeed, it has been, after *Gray*, clearly established by the Supreme Court that the admission of a co-defendant's confession violates the Confrontation Clause if the confession "notif[ies] the jury that a name has been deleted." *Greene v. Fisher*, 565 U.S. 34, 43 (2011) (quoting *Gray*, 523 U.S. at 195).

Based on the Supreme Court of Nevada's unchallenged recitation of the transcript, it was

6

obvious to the jury that a modification to the confession had been made to exclude reference to someone: "I told [neutral pronoun], I said . . . ." (ECF No. 16-16 at 3 (as in original).)  Ferguson, in his reply, provided the relevant portions of the original, undoctored, transcripts calls. (ECF No. 27 at 15.)  They show that the calls originally read, "I told JB, I said . . . ."—JB is a nickname for Ferguson. (*Id.* at 15; *see id.* at 18.)   Moreover, Monroe's statement amounted to a complete confession:

> "[W]hen we were in there [the crystal store] I told JB, I said, 'we don't want none of that [crystal] crap dude.' I didn't . . . and he f***** had to have 'em and so we put 'em in and then, it was [unintelligible, (but probably "JB's")] fault though, you know?
> . . . .
> And f***** when they [the police] pull us, you know, they checked and they f***** found it [the crystal that JB had made them steal], so . . . .

(*Id.* at 15) (last alteration in original).  Thus, Monroe told the jury that "[neutral pronoun]" stole the items that the police found in the car.  This would seem to violate *Gray* and *Greene*.

However, there is another reason—unexplored by the Supreme Court of Nevada—that this could not violate *Gray*, *Greene*, or the Confrontation Clause: Monroe's statements were not testimonial, and the Confrontation Clause applies only to testimonial evidence. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *United States v. Larson*, 495 F.3d 1094, 1099 n.4 (9th Cir. 2007) (en banc); *see also Soto v. Grounds*, No. C-13-5931-EMC, 2015 WL 1349662, at *14 (N.D. Cal. Mar. 25, 2015) ("A de novo review is a simple matter here because there is a bright line rule: the Confrontation Clause does not apply to nontestimonial hearsay.").  While *Crawford* did not speak to "whether and when statements made to someone other than law enforcement personnel are 'testimonial,'" *Davis v. Washington*, 547 U.S. 813, 823 n.2 (2006), it nonetheless noted that the Confrontation Clause has no issue with the admission of "an off-hand, overheard remark," even if the listener is a police officer. *Crawford*, 541 U.S. at 51.  Indeed, a statement is "testimonial" only if the "primary purpose" of the statement, to an objective observer, was to create an "out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

Monroe's recorded jailhouse phones calls to his friend were not testimonial.  The Third Circuit has addressed the exact issue before this Court, and, with "little hesitation," held the

7

overheard jailhouse phone calls by a co-defendant were not testimony. *See United States v. Berrios*, 676 F.3d 118, 127–28 (3d Cir. 2012); *see also Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) ("[T]he Confrontation Clause no longer applie[s] to non-testimonial hearsay such as the friend-to-friend confession . . . ."); *United States v. Dale*, 614 F.3d 942, 956 (8th Cir. 2010) (holding that a co-defendant's statement to fellow prisoner who was wearing a wire was not testimonial). Indeed, this case is nearly identical to *Saechao v. Oregon*, where the Ninth Circuit rejected a Confrontation Clause challenge to a jailhouse phone call. 249 Fed. App'x 678, 679 (9th Cir. 2007); *see also United States v. Gouveia*, 468 Fed. App'x 793, 796 (9th Cir. 2012) ("Since Hernandez did not know his statements were being recorded by law enforcement and had no reason to expect that they would be used at his and Gouveia's prosecution, his statements are not testimonial . . . ."). Moreover, the Supreme Court included as examples of statements that "were clearly nontestimonial," a statement "made unwittingly to a Government information" and "statements from one prisoner to another." *Davis*, 547 U.S. at 825. There is no evidence here that Monroe was trying to implicate Ferguson or an intent for the statement to later be used at trial. Therefore, on de novo review, Ferguson's Confrontation Clause challenge fails.

And even if the Confrontation Clause challenge were meritorious, this Court will not grant the petition if the State carries its burden of proving that the violation was harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 253–54 (1969). Whether an error is harmless depends on several factors, including "whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Unless a reviewing court "can confidently say that, on the whole record, the verdict would have been the same without the *Bruton* error," then the error is not harmless beyond a reasonable doubt. *Peterson*, 140 F.3d at 822; *see also United States v. Parks*, 285 F.3d 1133, 1140 (9th Cir. 2002) ("After an exhaustive review of the record we conclude that there is substantial evidence of [the defendant's] guilt, to the end that we are persuaded beyond peradventure that any error was harmless beyond a reasonable doubt.").

Ferguson's core contention at trial was that he was simply driving around with Monroe for thirty minutes before they were arrested, and that he was not aware that Monroe had just burgled the crystal store. (*See* ECF No. 27 at 52–53). When Ferguson was patted down, he had bracelets from the crystal store in his pocket. (ECF No. 13-3 at 137.) His contention was that he just happened to pick them up from the car when he got in. (*See* ECF No. 27 at 52–53).

But that does nothing to explain how, after Monroe picked Ferguson up, two interior motion detectors and the front door alarm were tripped at 2:15 am at the dentist office; another perimeter door, likely an exit door, was tripped at 2:17 am. (*See* ECF No. 13-3 at 39–41). When the police arrived, the dentist office had all of its doors locked and nothing was out of place. (ECF No. 13-3 at 18.) Minus nothing being missing, this was quite similar to the crystal store where an alarm was tripped for the front door at 1:14 am, the motion detector inside at 1:16 am, and the backdoor at 1:17 am. (*Id.* at 34–35.) The doors were locked when the police arrived, as well. (*Id.* at 56.)

Moreover, an eyewitness testified that, around 2:00am, a white minivan circled the dentist office two times, and the witness thought that something was amiss, but didn't mention it to his girlfriend with whom he was on the phone. (*Id.* at 65–67.) After the van waited for about half a minute, it pulled up right in front of the dentist office. (*Id.* at 67–68.) "A couple guys got out and they went right up to the dentist's office door and right in faster than I could stick a key in there and turn it." (*Id.* at 68.) Both were wearing hoods, and one had shoulder length blonde hair. (*Id.* at 69.) At that point, he decided to go into the bar "for [his] own security" and told the bartender that someone was breaking into the dentist office. (*Id.* at 70–71.)

The police arrived almost immediately, the white minivan was seen speeding away from the scene, and both Ferguson and Monroe were found in the car with the stolen goods from the previous robbery. *See infra* Ground 2-1. In light of this overwhelming evidence of Ferguson's guilt, any error was harmless beyond a reasonable doubt.

Ground 1 provides no basis for habeas relief.

**B. Ground 2**

In Ground 2, Ferguson argues that his Sixth Amendment right to effective assistance of

9

counsel was violated for five reasons. (ECF No. 6 at 7.)

To succeed on an ineffective assistance of counsel claim, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts evaluate counsel's performance from counsel's perspective at the time and begin with a strong presumption that counsel's conduct well within the wide range of reasonable conduct. *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004). When a state court has reviewed a *Strickland* claim, a federal court's habeas review is "doubly deferential"—the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Pinholster*, 563 U.S. at 190, 202.

### 1. Ground 2-1

Ferguson argues that trial counsel was ineffective for "failing to file a motion to suppress evidence obtained as a result of an illegal search and seizure traffic stop." (ECF No. 6 at 7.) To demonstrate prejudice when a *Strickland* claim is based on the failure to litigate a Fourth Amendment claim, a petition must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). The Supreme Court of Nevada denied this claim because it held that Ferguson failed to demonstrate either deficiency or prejudice. (ECF No. 18-15 at 2.)

In the early morning hours of September 25, 2006, Officer Salisburg was dispatched to respond to a burglary alarm that was going off at Anku Crystal Palace. (ECF No. 11-2 at 82.) While en route, he received another call that there was a burglary in process at a dentist's office located in a strip mall approximately a mile away from Anku Crystal Palace. (*Id.*) Less than a minute later, he arrived at the dentist's office. (*Id.* at 83.) On his approach to the rural strip mall that he described as rarely frequented that late at night, he saw a white minivan, parked directly in front of the dentist office, start backing up away from the office—it was the only vehicle in the area. (*Id.* at 83–85.)

Salisburg started "driving through the parking lot not catching up to it like it's speeding or fleeing." (*Id.* at 86.) His partner—in another car—caught up to the minivan on the road and pulled it over. (*Id.*) He noticed "a glass crystalline object inside [the van] and it looked really nice and it just immediately struck me as odd of why something like that was on the floorboard of the vehicle." (*Id.* at 90.) After Salisburg made the connection between the crystalline object and the nearby Anku Crystal Palace burglary alarm, Ferguson and Monroe were arrested. (*See id.* at 93.)

The initial stop was constitutionally proper, as an investigatory stop, "if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also United States v. Cortez*, 449 U.S. 411. 417 (1983) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). Reasonable suspicion is a "somewhat abstract" and "elusive concept," but it must be analyzed looking at the totality of the circumstances, allowing officers to draw logical inferences from his observations—a mere "hunch" in insufficient, but on the other hand, a reasonable suspicion still "falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 273–74 (citation omitted).

The officers had reasonable suspicion that crime was afoot. A burglary alarm had just been received and the only car that was parked in the area in a strip mall in the middle of the night was parked directly in front of the store that had an alarm going off, and it started backing away as the officers were approaching—and speeding away when the officers arrived. Ferguson argues that, because it turned out that no burglary occurred at the dentist office, the officers did not have reasonable suspicion to pull the minivan over. (ECF No. 6 at 15.) But we look at what officers know at the time, not what officers find out after the fact. *See Arvizu*, 534 U.S. at 273–74. Moreover, as explained above, a burglary still occurred—it's just that nothing was stolen.

Ferguson also argues that the motion to suppress would have been granted because of a "lack of nexus between Fergason as a passenger in the vehicle and the alleged stole property requisite to create reasonable suspicion." (ECF No. 6 at 15.) This would not have changed the reasonable suspicion calculus, and there is no reason that the evidence would have been excluded.

11

Because the motion to suppress would have been fruitless, Ferguson cannot demonstrate prejudice from the failure to file it—nor deficiency for a failure to do so. The Supreme Court of Nevada's rejection of Ferguson's claim did not involve an unreasonable determination of fact, nor was it contrary to or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 2-1 provides no basis for habeas relief.

### 2. Ground 2-2

Ferguson argues that trial counsel was ineffective for "failing to seek severance of Fergason from his co-defendant." (ECF No. 6 at 7, 16.) Nevada law provides that a grant a severance if a defendant would be "prejudiced" by a joinder. Nev. Rev. Stat. § 174.165. Severance is applicable "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Chartier v. State*, 191 P.3d 1182, 1185 (Nev. 2008) (citation omitted). In other words, Ferguson has to show a reasonable probability that the joint trial was "manifestly prejudicial." *Bruno v. State*, 281 P.3d 1157, 1159 (Nev. 2009).

To do so, Ferguson points to the fact that "Monroe had conceived a murder-for-hire plot against the trial judge presiding over this matter. The knowledge of this murder-for-hire plot was very highly publicized in the media." (ECF No. 6 at 19.) The Supreme Court of Nevada denied this claim because it held that Ferguson failed to demonstrate either deficiency or prejudice. (ECF No. 18-15 at 3.) It noted: "[T]he trial court excluded all evidence of the murder-for-hire plot . . . . Further, [Ferguson] failed to present any evidence that the jurors had knowledge of the plot . . . ." (*Id.*) Indeed, during *voir dire*, none of the jurors indicated that they had heard about the case or heard of Ferguson or Monroe. (ECF No. 17-24 at 30.)[4] Therefore, Ferguson has failed to meet his burden of showing that the severance would have been granted. Morever, even if it had been granted, he cannot demonstrate a reasonable probability that the outcome of the proceedings would

---

[4] For this same reason, any claim that Ferguson's due process rights or right to a fair trial were infringed based on being tried with Monroe in light of the murder-for-hire plot fails.

have been different in light of the overwhelming evidence of his guilt. *See supra* Ground 1. Lastly, he fails to demonstrate deficiency because counsel testified that he made a strategic decision to keep Ferguson in the same trial with Monroe because the disparities in the amount of evidence might help Ferguson come off as less culpable. (*See* ECF No. 17-24 at 6–11, 26–27.)

Because the motion to sever would have been fruitless, Ferguson cannot demonstrate prejudice from the failure to file it—nor deficiency for a failure to do so. The Supreme Court of Nevada's rejection of Ferguson's claim did not involve an unreasonable determination of fact, nor was it contrary to or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 2-2 provides no basis for habeas relief.

### 3. Ground 2-3

Ferguson argues that trial counsel was ineffective for "failing to seek severance based upon intent to admit phone calls between Monroe and third parties which incriminated Ferguson." (ECF No. 6 at 23.) The Supreme Court of Nevada rejected this claim because Ferguson failed to demonstrate either deficiency or prejudice. (ECF No. 18-15 at 3.) It noted that, "[d]espite bearing the burden of proof . . . , [Ferguson] failed to identify any portion of the conversation that incriminated him and thus failed to demonstrate a reasonable probability of a different outcome at trial had a motion to sever been filed and granted." (*Id.*) His federal petition does no better, and therefore he has failed to carry his burden of proof on either deficiency or prejudice. Indeed, he fails to demonstrate deficiency because counsel testified that he made a strategic decision to keep Ferguson in the same trial with Monroe because the disparities in the amount of evidence might help Ferguson come off as less culpable. (*See* ECF No. 17-24 at 6–11, 26–27.) Morever, the transcripts from the phone calls to which Ferguson was not a party do not name Ferguson, except for the one that was redacted. (*See* ECF No. 27 at 11–43.) Simply having one's co-defendant seemingly confess to the crime and mention that someone else did the crime with him is not so prejudicial as to "prevent the jury from making a reliable judgment about guilt or innocence." *Chartier*, 191 P.3d at 1185. And as in Ground 2-3, above, he cannot demonstrate a reasonable probability of a different

13

outcome at trial in light of the overwhelming evidence against him. *See supra* Ground 1.

The Supreme Court of Nevada's rejection of Ferguson's claim did not involve an unreasonable determination of fact, nor was it contrary to or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 2-3 provides no basis for habeas relief.

### 4. Ground 2-4

Ferguson argues that trial counsel was ineffective for "failing to communicate with Fergason as to defending his case or conducting any investigation." (ECF No. 6 at 27.) The Supreme Court of Nevada rejected this claim because Ferguson failed to demonstrate either deficiency or prejudice. (ECF No. 18-15 at 3.) It noted that Ferguson failed "to present any evidence of what better communication or a more thorough investigation would have revealed." (*Id.*)

For an ineffective assistance of counsel claim based on a failure to investigate to succeed, the defendant must, beyond satisfying the doubly deferential *Strickland* analysis applicable on federal habeas review, point to the evidence that would have been discovered with more than a mere hunch; speculation is insufficient. *See Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000); *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir. 1994). In his federal petition, Ferguson says only that doing so "would have helped his defense." (ECF No. 6 at 29.) That conclusory allegation is insufficient, and therefore Ferguson has failed to carry his burden as to prejudice. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989); *United States v. Schaflander*, 743 F.2d 714, 721–22 (9th Cir. 1984).

The Supreme Court of Nevada's rejection of Ferguson's claim did not involve an unreasonable determination of fact, nor was it contrary to or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 2-4 provides no basis for habeas relief.

### 5. Ground 2-5

Ferguson argues that trial counsel was ineffective for "failing to assure [Ferguson] received the good time credits to which he was entitled." (*Id.* at 30.) Ferguson argues that because he was "incarcerated during the proceedings in this matter and at the time of sentencing[,] [he] was entitled

14

to 238 days as a credit of time served. [Counsel] failed to obtained this credit for him and was ineffective for not doing so." (*Id.* at 31.) Ferguson argues that he was on probation when the burglaries occurred on September 25, 2006; his probation was then revoked on April 11, 2007. He was paroled but then immediately re-arrested on September 10, 2007, for the burglaries, and he remained incarcerated on these charges until the sentencing on May 5, 2008—238 days later. (*See id.* at 31–32.) Under Nevada law, a defendant may have be entitled to credit time served unless the defendant was

> convicted of a subsequent offense which was committed while the defendant was . . . on probation or parole from a Nevada conviction [in which case the defendant] is not eligible for any credit on the sentence for the subsequent offense for the time the defendant has spent in confinement which is within the period of the prior sentence.

Nev. Rev. Stat. § 176.055(b), (b)(2).

Relying on this exception, the Supreme Court of Nevada rejected Ferguson's claim because Ferguson failed to demonstrate either deficiency or prejudice. (ECF No. 18-15 at 4.) It noted that, "[c]ontrary to [Ferguson's] implicit argument, this section applies regardless of whether he was confined pursuant to the prior sentence or pursuant to the subsequent offense." (*Id.*) "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Therefore, in light of the Supreme Court of Nevada's interpretation of Nevada state law, Ferguson cannot demonstrate deficiency or prejudice.

The Supreme Court of Nevada's rejection of Ferguson's claim did not involve an unreasonable determination of fact, nor was it contrary to or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 2-5 provides no basis for habeas relief.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Ferguson's Petition for Writ of Habeas Corpus, (ECF No. 6 ), is **DENIED** on the merits, and this action is **DISMISSED with prejudice**.[5]

---

[5] A petitioner may not use a reply to an answer to present additional claims and allegations that are not included in the federal petition. *See, e.g.*, *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). To the extent that Ferguson has done so in his federal Reply, this Court does not consider these

15

Because reasonable jurists would not find this decision to be debatable or incorrect, **IT IS FURTHER ORDERED** that a **certificate of appealability** is **DENIED**. The Clerk of Court is directed to **enter judgment, in favor of respondents and against Ferguson, dismissing this action with prejudice**.

**DATED** this  29  day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

additional claims and allegations.